# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

v.                                             CASE NO.  4:10cr48-RH/WCS

CLARENCE WILLIAM KALFAS,

      Defendant.

_____/

## ORDER DENYING THE MOTION FOR A NEW TRIAL

The defendant Clarence William Kalfas was convicted in a jury trial of bank fraud and making a false statement to a federally insured bank.  He has moved for a new trial based on newly discovered evidence and the weight of the evidence.  One of his contentions is that the allegedly defrauded bank (ProBank) and another bank (Wakulla Bank) failed to produce relevant records in response to subpoenas returnable prior to or at the trial.  I allowed Mr. Kalfas to serve additional subpoenas requiring the banks to produce records and provide testimony at two evidentiary hearings after the trial.  I denied the motion for a new trial on the record at the conclusion of the second hearing.  This order confirms the ruling.

# I

Mr. Kalfas was a principal of Kalfas Brothers, Inc. Kalfas Brothers operated a restaurant. Mr. Kalfas, acting for Kalfas Brothers, separately applied for loans from Wakulla Bank and ProBank. He provided financial statements to each bank listing assets and liabilities. He told neither bank that he had applied to the other.

Wakulla Bank loaned the corporation $65,000 on June 27, 2008. Mr. Kalfas personally guaranteed the loan. The loan was secured by the restaurant's equipment, inventory, and accounts. Mr. Kalfas signed a security agreement explicitly so providing.

Mr. Kalfas continued to pursue the application to ProBank without telling ProBank that the corporation had obtained a loan from, and pledged the equipment to, Wakulla Bank. ProBank loaned the corporation $75,000 on July 11, 2008. Mr. Kalfas personally guaranteed the loan. The loan was secured by the restaurant's equipment—the very same equipment that had been pledged two weeks earlier to Wakulla Bank.

All of these facts are undisputed on this record even now.

# II

The corporation paid the loans for a time but eventually filed bankruptcy proceedings. Mr. Kalfas testified at the creditors' meeting that he pledged the same equipment as security for both loans because its value was sufficient to cover

both loans and his accountant told him it was therefore okay to pledge the same equipment to both banks. But it of course was not okay to pledge the same equipment as security for the second loan *without telling the second bank of the pledge to the first bank*. Nor was it okay to borrow money from the second bank without telling the bank of the loan from the first bank. Failing to tell the second bank of the earlier loan and earlier pledge was sufficient to make Mr. Kalfas guilty of the charged offenses.

## III

A motion for a new trial based on newly discovered evidence is "highly disfavored." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc). To prevail on such a motion, the defendant must show that:

> (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (quoting *United States v. Ramos*, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999)); *see also United States v. Sessions*, 297 F. App'x 835, 838 (11th Cir. 2008); *Lynn v. United States*, 365 F.3d 1225, 1237 (11th Cir. 2004).

The standard for a new trial based on the weight of the evidence is this:

On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.1985)) (citations omitted). The standard is not easily met:

Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases."

*Hernandez*, 433 F.3d at 1336-37 (quoting *Martinez*, 763 F.2d at 1313).

IV

Mr. Kalfas is not entitled to a new trial because the evidence strongly supports the verdict. This is true of the evidence presented at the trial, and it is also true of that evidence together with the evidence presented at the evidentiary hearings on the motion for a new trial. Even now, Mr. Kalfas has presented no evidence calling his guilt into question.

Thus there is no basis for concluding that a "new trial probably would produce a different result," *Jernigan*, 341 F.3d at 1287, or that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of

justice may have occurred." *Hernandez*, 433 F.3d at 1335.

Indeed, Mr. Kalfas's testimony at the bankruptcy creditors' meeting is strong evidence of guilt. The government did not offer the evidence at the jury trial during the government's case in chief, perhaps intending to use it to cross-examine Mr. Kalfas. But Mr. Kalfas did not testify. I sustained his objection to the government's attempt to introduce evidence on this subject during the government's rebuttal case; the evidence would have been admissible during the government's case in chief but was not proper rebuttal. At a new trial, if Mr. Kalfas made the assertions he has made in support of his motion for a new trial, the government would surely introduce the creditors'-meeting testimony. The evidence of guilt at a new trial thus would be stronger than the evidence at the original trial.

## V

To be sure, two items of evidence would be available at a new trial that were not available at the original trial. They are not sufficient, alone or in combination, to warrant a new trial.

## A

First, Steven Lohbeck, the ProBank loan officer, made notes during his initial meeting with Mr. Kalfas. The notes were written on one side of a page from a small pad. ProBank produced a copy of the notes in response to a subpoena, and

they were introduced into evidence at the trial.  But there also was a single note on the back side of the page.  ProBank failed to copy the back side of the page.  The note was discovered only after the trial.  The note said, "Receivable only."

There is no reason to believe that ProBank intentionally failed to produce the note prior to the trial.  Failing to copy the back side of the page probably was just a mistake.  And even more clearly, there is no reason to believe the government had possession of or even knew about the note prior to the trial, or had any reason to suspect its existence.  The government's failure to provide the note to the defense thus was not a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The note has too little probative value to warrant a new trial.  In a post-trial hearing, Mr. Lohbeck testified the note might have been made during a conversation with Mr. Kalfas but might not have been.  Mr. Lohbeck said the note might have related to the Kalfas loan, but might not have.  He simply did not remember making the note or what it related to.  The testimony rings true; for a loan officer, meeting with a customer about a loan application is a routine transaction.

One possible explanation of the note is that Mr. Kalfas asked to have the ProBank loan secured only by the restaurant's receivables.  That would not help Mr. Kalfas in this case, because ProBank plainly did not *agree* to have the loan

secured only by the receivables.  The documentary evidence makes this clear.  Mr. Kalfas has presented no evidence, even now, that ProBank agreed to have its loan secured only by receivables.  And Mr. Kalfas's bankruptcy testimony is flatly to the contrary.  Thus, if anything, evidence that Mr. Kalfas *asked* to have the ProBank loan secured only by receivables would be further evidence of guilt; the evidence would suggest that Mr. Kalfas knew that the equipment was not available for pledge to ProBank because it already had been pledged to Wakulla Bank.  Or so a juror might conclude.

Another possible explanation of the note is that Mr. Lohbeck and Mr. Kalfas discussed the Wakulla loan and Mr. Kalfas told Mr. Lohbeck that it was secured only by receivables.  But the record provides absolutely no support for any such assertion, other than the cryptic note "Receivable only."  Before the note surfaced, Mr. Kalfas never suggested in this proceeding that he believed the Wakulla loan was secured only by receivables.  Thus in pretrial proceedings, Mr. Kalfas asserted, through his attorney, that the Wakulla security agreement was invalid under Florida law, but he never suggested that it covered only receivables, not equipment.  Mr. Kalfas's attorney made various assertions in opening statement and closing argument, but he did not suggest that the Wakulla loan was secured only by receivables, or that Mr. Kalfas understood it that way.  The attorney asked no questions of any witness hinting at the theory.  And Mr. Kalfas has presented no

evidence, even now, that he believed at the time that the Wakulla loan was secured only by receivables. Mr. Kalfas's bankruptcy testimony is again flatly to the contrary.

In short, the "Receivable only" note does not call into question the conclusion that Mr. Kalfas is guilty of these charges.

B

The second item of evidence that would be available at a retrial but was not available at the original trial is Mr. Lohbeck's more-recent testimony. Mr. Lohbeck testified at the trial that he did not know of the Wakulla loan as of July 11, 2008, when ProBank made its loan. Mr. Lohbeck has said consistently that he learned of the Wakulla loan during a conversation with a close friend, William Davis, who was an officer at Wakulla Bank. At the trial, Mr. Lohbeck said the conversation occurred a couple of weeks after July 11. He was confronted on cross-examination with minutes of a ProBank loan-committee meeting that occurred on July 16, 2008. The minutes make clear that ProBank knew of the Wakulla loan by that time. The minutes express concern about the relative priority of the banks' competing security interests in the equipment.

At a post-trial hearing, Mr. Lohbeck said the conversation with Mr. Davis might have occurred before or after July 11; he was unsure. Mr. Davis has said the same thing. On the full record now before the court, it seems possible, at least, that

the conversation took place before July 11, and that Mr. Lohbeck thus knew, before ProBank made its loan, that Wakulla Bank had also made a new loan to Kalfas Brothers. Indeed, this seemed possible on the evidence presented during the trial.

Even so, it seems unlikely that Mr. Lohbeck also knew, before ProBank funded its loan, that the equipment had been pledged to Wakulla Bank. There is no evidence that Mr. Davis and Mr. Lohbeck discussed the loan at that level of detail, and no evidence that ProBank would have made the loan had it known it would be in second position on the equipment. And there is another possible explanation for ProBank's knowledge, as of July 16, that Mr. Kalfas had pledged the equipment to Wakulla Bank; by that time, Wakulla Bank's UCC-1 had hit the public records.

If any of this was critical to the issue of Mr. Kalfas's guilt, the motion for a new trial would be more substantial. But a person commits bank fraud when he applies for a loan based on false pretenses, whether or not the bank learns of the false pretenses before it makes a loan and indeed whether or not the bank makes a loan at all. Similarly, a person commits the crime of making a false statement to a federally-insured bank when he makes a material false statement in support of a loan application, whether or not the bank learns the statement is false before it makes the loan, and indeed whether or not the bank makes a loan at all. The jury instructions properly so advised the jury, without objection from Mr. Kalfas.

Mr. Kalfas submitted a financial statement to ProBank and discussed his liabilities—and Kalfas Brothers' liabilities—with Mr. Lohbeck. Mr. Kalfas never disclosed the Wakulla loan. Failing to disclose the Wakulla loan made Mr. Kalfas guilty of the charged crimes, whether or not Mr. Lohbeck learned of the Wakulla loan from another source. The same is true of the failure to disclose the pledge of the equipment.

In sum, any shift in Mr. Lohbeck's testimony at a new trial about when he learned from Mr. Davis about the Wakulla loan would not affect the outcome.

## VI

Mr. Kalfas has raised a long list of additional assertions in support of his motion for a new trial. I have considered all with care. None warrants a new trial.

## VII

For these reasons,

IT IS ORDERED:

Mr. Kalfas's motion for a new trial, ECF Nos. 96 & 97, is DENIED.

SO ORDERED on December 28, 2010.

s/Robert L. Hinkle
United States District Judge
